UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ERIN E. CAMPBELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:24 CV 365 RWS |
| | ) |
| LELAND DUDEK[1], | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Erin E. Campbell brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act. For the reasons discussed below, the Commissioner's decision will be affirmed.

## Background

Campbell protectively filed a Title II application for disability insurance benefits on December 27, 2021, alleging that she became disabled on December 20, 2020. Tr. 202–07. Campbell alleged that her disability was due to anxiety,

---

[1] Leland Dudek became the Commissioner of Social Security on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for Martin O'Malley as the defendant in this suit.

depression, chronic obstructive pulmonary disorder (COPD), diabetes, high blood pressure, and sleep apnea. Tr. 231.

Campbell's application was denied at the initial claims level. Tr. 69–71. Campbell then filed a request for a hearing before an administrative law judge ("ALJ"), Tr. 125–26, which was held on January 13, 2023. Tr. 41–68. On April 11, 2023, the ALJ issued an unfavorable decision finding that Campbell had the severe impairments of degenerative disc disease of the lumbar spine, left ulnar nerve palsy/medical epicondylitis, diabetes mellitus, obesity, depressive disorder, and generalized anxiety order, but that she did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 21–34. As a result, the ALJ concluded that Campbell was not disabled within the meaning of the Social Security Act at any time from the alleged onset date though the date of decision. Tr. 34.

On January 12, 2024, the Appeals Council denied review of the ALJ's decision. Tr. 1–3. Campbell then filed this action on March 11, 2024, seeking judicial review of the Commissioner's final decision. Campbell argues that the Commissioner's decision should be reversed because (a) the ALJ failed to resolve a conflict in the vocational evidence; (b) the ALJ erred in finding that Campbell's impairments were less severe than alleged or her subjective complaints were not reliable due to failure to seek greater treatment; and (c) the ALJ erred in relying

2

heavily on a "copy-and-paste" repeated list of daily living activities that do not demonstrate the ability to perform substantial gainful activity.

## Legal Standard

To be eligible for disability benefits under the Social Security Act, a claimant must prove that she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a "medically determinable physical or mental impairment" that can be expected to result in death or which has lasted or can be expected to last for at least twelve continuous months. 42 U.S.C. § 423(d)(1)(A). A claimant will be declared disabled only if her impairment or combination of impairments is of such severity that she is unable to engage in her previous work and—considering her age, education, and work experience—she is unable to engage in any other kind of substantial gainful work in the national economy. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner engages in a five-step evaluation process: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work; and (5) whether the claimant

has the RFC to perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520. The burden of proof rests with a claimant through the first four steps but shifts to the Commissioner at step five. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009).

When reviewing a denial of disability benefits, my role is limited to determining whether the Commissioner's decision complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *Id.* Substantial evidence refers to less than a preponderance but enough for a reasonable person to find it adequate to support the Commissioner's decision. *Id.* I must affirm the Commissioner's decision if, "after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## ALJ Decision

The ALJ denied Campbell disability benefits after finding that she was not disabled within the meaning of the Social Security Act at any time from the date of her alleged onset of disability of December 20, 2021 through April 11, 2023, the date Henneman was previously found to be disabled. Tr. 34.

4

At step one, the ALJ found that Campbell had not engaged in substantial gainful activity since December 20, 2021. Tr. 24. At step two, the ALJ found that Campbell had the following severe impairments: degenerative disc disease of the lumbar spine, left ulnar nerve palsy/medical epicondylitis, diabetes mellitus, obesity, depressive disorder, and generalized anxiety order. Tr. 24–25. The ALJ also found the following non-severe impairments: "mild" COPD, obstructive sleep apnea, hypertension, GERD, migraines, Vitamin B12 and D deficiency, vison loss including-myopia/astigmatism/dry-eyes/sclerosis, palpitations, tachycardia, renal cysts, hyperlipidemia and fatty liver. *Id.* The ALJ further found the following not medically determinable impairments: coronary artery disease, bilateral hand issues/carpal tunnel syndrome, swelling in hands/feet, fatigue, trouble focusing/concentrating, and incontinence. *Id.*

At step three, the ALJ found that Campbell did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 25–26. At step four, the ALJ found that Campbell had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), with several limitations. Tr. 27–33. Based on RFC, the ALJ found that Campbell could not perform her past relevant work as a medical assistant and school secretary. Tr. 33. However, at step five, the ALJ found that Campbell was capable of performing other jobs that existed in significant numbers

in the national economy. Tr. 33–34. A vocational expert identified the following jobs within Campbell's RFC as existing in significant numbers in the national economy: collator operator (33,000 positions), router clerical (25,150 positions), and marker (136,791 positions). Tr. 34. Because Campbell was capable of performing other jobs that existed in significant numbers in the national economy, the ALJ concluded that she was not under a disability at any point during the relevant period. *Id.*

## **Medical Records and Other Evidence Before the ALJ**

With respect to the medical records and other evidence of record, I adopt Campbell's recitation of facts, ECF No. 9-1, to the extent they are admitted by the Commissioner, ECF No. 10-1. Additional facts will be discussed as necessary to address the parties' arguments.

## **Discussion**

Campbell argues that the Commissioner's decision should be reversed because (a) the ALJ failed to resolve a conflict in the vocational evidence; (b) the ALJ erred in finding that Campbell's impairments were less severe than alleged or her subjective complaints were not reliable due to failure to seek greater treatment; and (c) the ALJ erred in relying heavily on a "copy-and-paste" repeated list of daily living activities that do not demonstrate the ability to perform substantial gainful activity.

6

### A. Vocational Evidence

In this case, the ALJ determined that Post's RFC included the limitation that she could only occasionally work with moving mechanical parts. Tr. 27. After considering Post's age, education, work experience, and RFC, a vocational expert testified that an individual of Post's could perform the following jobs exist in the national economy: collator operator,[2] router clerical,[3] and marker.[4] Tr. 65.

Campbell argues that the ALJ erred in finding that she could perform these jobs because the ALJ failed to identify and resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). *See* Social Security Ruling 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between the [the vocational expert] and the DOT, the

---

[2] The Dictionary of Occupational Titles ("DOT") defines this position as follows: "Tends machine that assembles pages of printed material in numerical sequence: Adjusts control that regulates stroke of paper pusher, according to size of paper. Places pages to be assembled in holding trays. Starts machine. Removes assembled pages from machine." DOT § 208.685-010, 1991 WL 671753.

[3] The DOT defines this position as follows: "Stamps, stencils, letters, or tags packages, boxes, or lots of merchandise to indicate delivery routes. Reads addresses on articles and determines route, using standard charts." DOT § 222.587-038, 1991 WL 672123.

[4] The DOT defines this position as follows: "marker; price marker; ticket maker Marks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article. Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article. May record number and types of articles marked and pack them in boxes. May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor of discrepancies. May print information on tickets, using ticket-printing machine [TICKETER (any industry); TICKET PRINTER AND TAGGER (garment)]." DOT § 209.587-034, 1991 WL 671802.

adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence . . ."). Specifically, Campbell argues that the collator operator and marker positions require regular use of moving mechanical parts, and that this conflict was not acknowledged or resolved by the ALJ.

After review of the record, I find that there was no conflict between the vocational expert evidence and the DOT. Campbell argues that the collator operator position involves "tending to a machine that assembles pages of printed material," and the marker position involves "press[ing] lever or plunge of mechanism that pins, pastes, tie or staples." DOT § 208.685-010, 1991 WL 671753; DOT § 209.587-034, 1991 WL 671802. However, for both these occupations, the DOT states "Moving Mech[anical] Parts: Not Present – Activity or condition does not exist." *Id.* In addition, the cases cited by Campbell—all from the Central District of California—do not support her position because each involves a conflict between an RFC limiting work involving dangerous machinery and suggested occupations involving power tools, motorized equipment, bench machines, or other dangerous tools. *Cf. Jimenez v. Astrue*, No. EDCV 11-1670 JC, 2012 WL 1067945 (C.D. Cal. Mar. 29, 2012); *Murphy v. Astrue*, No. CV 09-8640 JEM, 2011 WL 124723 (C.D. Cal. Jan. 13, 2011); *Heacock v. Astrue*, No. EDCV 10-01625-JEM, 2011 WL 3020919 (C.D. Cal. July 22, 2011); *Dimaggio v. Astrue*, No. EDCV 10-1407 FFM, 2011 WL

8

2563195 (C.D. Cal. June 28, 2011); *Reyes v. Colvin*, No. CV 13-4850-MAN, 2015 WL 349352 (C.D. Cal. Jan. 23, 2015).

However, even if Campbell was unable to perform the occupations of collator operator and marker, the ALJ concluded that Campbell could perform the occupation of router. At the time of the ALJ's decision, there were 25,150 router jobs nationally. Tr. 34. This is sufficient to show that there were jobs existing in significant numbers in the national economy that Campbell could perform. *See Weiler v. Apfel*, 189 F.3d 1107, 1110–11 (8th Cir. 1999) (find that 32,000 jobs in the national economy satisfied the ALJ's burden); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (finding that the 10,000 jobs in the national economy satisfied the ALJ's burden). As a result, I find that the ALJ did not err on this issue.

**B.     Impairments and Subjective Complaints**

In this case, the ALJ determined that Campbell's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 28. Campbell argues that the ALJ erred because he improperly discounted her testimony based on her failure to seek greater treatment.

The ALJ did note that Campbell had not received a suggested steroid injection. Tr. 29. However, in making his determination, the ALJ considered the record holistically, including the objective medical evidence, examination findings,

9

Campbell's treatment and response to treatment, medical opinion evidence, prior administrative findings, and her subjective claims. Tr. 28–32. In this case, the objective medical evidence showed unremarkable left elbow x-ray findings, Tr. 28, 735–36; full active range of motion, intact sensation, and normal strength, Tr. 29–30, 1125; and normal gait with no distress. Tr. 29–30, 693, 699, 910, 967, 105–59. Examination findings showed alertness, intact insight, and judgment. Tr. 28, 30, 679, 1215, 1218. The ALJ also reviewed Campbell's daily activities, including household tasks, preparing quick meals, driving, weekly shopping, and maintaining personal hygiene. Tr. 30–31. Finally, the ALJ considered medical opinion evidence regarding Campbell's limitations. Tr. 31–32.

In light of these considerations and supporting facts, I find that the ALJ did not improperly evaluate Campbell's impairments and subjective complaints. The ALJ explicitly found that the medical opinion evidence was based on subjective complaints and not entirely consistent with the medical and other evidence in the record, he identified good reasons for discounting the complaints, and his determination is supported by substantial evidence in the record as a whole. I will therefore defer to the ALJ's determination. *See Renstrom*, 680 F.3d at 1067 ("Because the ALJ gave good reasons for discounting [claimant's] credibility, we defer to the ALJ's credibility findings."); *Eichelberger v. Barnhart*, 390 F.3d 584,

590 (8th Cir. 2004) ("We will not substitute our opinion for that of the ALJ, who is in a better position to assess credibility.").

### C. Daily Activities

Campbell argues that the ALJ improperly relied on her daily living activities when assessing the severity of her mental impairments. In this case, the ALJ evaluated Campbell's impairments under the four broad areas of mental functioning: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. Tr. 25–26. Campbell alleges that the ALJ relied on a "copy-and-paste" list of daily living activities and did not assess each area of mental functioning independently.

The ALJ found that Campbell had moderate limitations in each of the four areas. For each area, the ALJ noted her daily living activities of sweeping and vacuuming, preparing quick meals, driving twice a week, shopping once a week, reading horror story books, and using the internet to look at news.

However, for each area, the ALJ discussed evidence in addition to Campbell's daily activities. In the area of understanding, remembering or applying information, the ALJ noted that Campbell is able to perform multi-step activities, use reasoning and judgment to make decisions, and follow through with medical advice. Tr. 25. In the area of interacting with others, the ALJ noted that Campbell has anxiety and

11

panic attacks in public, but can maintain familial relationships, go to the grocery store, wait in public areas without difficulty, and behave appropriately with treatment providers. Tr. 26. In the area of concentrating, persisting or maintaining pace, the ALJ noted Campbell is able to maintain conversation and perform simple math. Id. Finally, in the area of adapting or managing oneself, the ALJ noted Campbell is able to maintain hygiene, make plans, and recognize hazards.

As demonstrated by the above discussion, the ALJ's decision is supported by substantial evidence. Although Campbell argues that the ALJ mis-weighed evidence supporting a finding that she suffered from a severe mental impairment, the ALJ provided sufficient evidence to support his determination. *See Dols v. Saul*, 931 F.3d 741, 746 (8th Cir. 2019) (citation omitted) (stating that it "is not the role of this court to reweigh the evidence presented to the ALJ or to try the case de novo"). As a result, I find the ALJ did not err in evaluating Campbell's mental impairments.

## Conclusion

While Campbell may believe that the evidence in her case record should have been assessed differently, it is not my role to reweigh evidence considered by an ALJ. *See Hensley*, 829 F.3d at 934. The ALJ's decision demonstrates that he evaluated all the medical and other evidence in Campbell's case record and adequately explained his reasons for the weight given to the evidence. Because the ALJ's decision complies with the relevant legal requirements and is supported by

12

substantial evidence in the record as a whole, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner will be **AFFIRMED**, and the complaint of Plaintiff Erin E. Campbell will be **DISMISSED** with prejudice.

A separate Judgment in accordance with this Memorandum and Order will be entered on this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March 2025.